O’Neall, J.,
dissenting. In this case, as I think the decision is virtually a repeal of the 45th section of the Act of 1785, ,(P. L. 381,) it is my duty to state the reasons why I cannot concur in such a result.
It is not pretended, by a majority of the Court, that if this was a new question, (as they suppose it is not,) the Act could be construed in the manner in which it has been.
To me it seems to be plain that there never has been any decision ruling or touching the point involved, in any way contrary to the decision below. I have heard it said, and argued here, that Circuit decisions and practice have been that way. If that be so, I am not aware that an Act of-the Legislature could be thus repealed or altered. But I confess the course of practice with which I was for many years very familiar, when at the bar, was altogether otherwise. I never heard a decision or opinion intimated different from the decision on the Circuit, until this case. But it is necessary to look to the law and be guided by it, and not by recollections of Nisi Prius decisions, or the practice pursued by the bar.
The 45th section is as follows — “ And whereas, it is necessary to settle the mode of proving and recording deeds and other conveyances, in the several Counties of this State, for preventing frauds, Be it further enacted, that no conveyance of lands, *463 tenements or-hereditaments, within this State, shall pass, alter, or change from one person or persons to another, any estate of inheritance, in fee simple, or any estate for life or lives, nor shall any greater or higher estate be made, or take effect, in any person or persons, or any use thereof, to be made by bargain or sale, lease and release, or other instrument, unless the same be made in writing, signed, sealed and recorded in the Clerk’s office of. the County where the land mentioned to be passed or granted shall lie, in manner and form following: that is to say, — if 'the person or persons who shall make and seal such instrument of writing, shall be resident within the State at the time of .making and sealing the same, then the recording shall be within six months from the signing, sealing and delivery, and if the person or persons so making, signing and sealing shall be resident in any other of the United States at the time aforesaid, then the recording shall be within twelve months, and if without the limits of the United States, then the recording shall be within two years ; and if any deed or any other conveyance shall not be recorded within the respective times before mentioned, such deeds or other conveyances shall be legal and valid only as to the parties themselves and their heirs, but shall be void and incapable of barring, the, rights of persons claiming as creditors, or under subsequent purchases recorded in the manner hereinbefore prescribed,” &c.
After reading over the clause, it seems to me so plain on its words, that it was not intended that a deed not recorded within the time limited-by the Act, should have effect against one subsequently acquired and duly recorded, that I am at a loss how to reason about it, so as to make it still plainer. But as others of equal, if not, superior claims to knowledge, have been able to draw a different conclusion, it is my duty to dissect the Act. It is plain — 1st. That unless a deed be recorded in the proper office, and within the time limited by the Act, it shall not pass, alter or change from one person to another, any estate in land. 2d. That a deed, not recorded in the proper office and within the time limited, shall be legal and valid only as to the parties *464 themselves and their heirs. 3d. That such a deed, not recorded in the proper office, or within the time limited by the Act, shall be incapable of barring the rights of persons claiming as creditors, or under subsequent purchases recorded, in the proper office, and within the time limited by the Act.
It is true, there is, between the first and second provisions, such discrepancy, that they cannot stand, as independent provisions : but being construed together and in connexion with the third, they make this plain provision : that a deed not recorded, in time, or in the proper office, shall not, as against persons claiming as creditors, or under subsequent purchases duly recorded, pass, alter or change any estate in land from one person to another. This reading of the Act is plain and consistent, with all its words. It leaves the unrecorded deed, or deed not recorded in time, a good conveyance as between the parties; but, as against creditors, who may find it necessary to make the land thus conveyed liable to pay their debts, b3r fi. fa. or any other means, — or any subsequent purchaser, whose deed may be duly recorded, — it is as if it never was executed, — it does not pass, alter or change the estate. This, reading could hardly be questioned were it not for two things, 1st. The Act of 1698, P. L. 3, which it is supposed is to be construed in pari materia, and, therefore, according to its provisions, the first recorded deed, though not in time according to the Act of 1785, is yet to have effect. This notion has some support, in the case of Barnwell and others' vs. Porteous, 2 Hill Ch. 219, — but it will be seen on reading that case, that the reasoning of my brother Evans is placed upon the fact, that the County Court Act (1785) did not extend to Beaufort, and, therefore, as to that district, the Act of 1698 was perhaps the only Act regulating recording, unless it be that we may take, in connection with it, the proviso of ’89, (P. L. 485,) which permitted the recording to be in the Clerk’s Office of the County, the Secretary’s Office, or Registry of Mesne Conveyances of any district where County Courts were not established and where such lands lie.
*465 That decision may possibly be supported on that view: but otherwise it is clearly wrong.
It never can be maintained, that two Acts whose provisions are in direct collision shall be so construed, that both shall stand. The Act of 1698 declares 'that the first deed recorded in the Register’s Office, Charleston, shall be taken, deemed, adjudged, al-. lowed of and held to be the first sale, conveyance, &c. The Acts of ’85 and ’89 together declare that unless recorded within six months in the Office [now] of the Register of Mesne Conveyances of the district where the land lies, it shall not, as against persons claiming as creditors, or under subsequent purchases duly recorded, have any effect to pass, alter or change any estate in land. The conflict between the two is apparent; and the Act of 1698 never can be interpoláted between the provisions of the Act of 1785, unless the legal maxim leges priores, posteriores abrogante be reversed. The Act of 1789, however, puts to rest all this fanciful reasoning arising out of the provisions of the Act of 1698. The legislature, within four years of the former enactment, gave us their construction. The Act of 1789, tells us, that by reason of so material an alteration of the laws of the State, as that of the 45th section of the Act of 1785, being concealed in the body of the Act for the establishment of County Courts, it has so happened very few or no mortgagees, or purchasers, have discovered the same, but have permitted the time allowed for recording to elapse without recording their mortgages or conveyances, whereby they may be deprived of the benefit of the Act: it was therefore enacted, that all mortgages and conveyances between the Acts of ’85 and ’89, not recorded as required by the Act of ’85, should be legal and valid if recorded within twelve months from this Act. This is a clear exposition, that a deed, without the aid of the Act of ’89, is, if not recorded within six months, the same as if it never was recorded, and that the Act of 1698, in such case, never can have effect.
But it is said, 2d — there is another thing ’which militates against the plain literal reading of the 45th section of the Act *466 of ’85, and that is, that notice of an unrecorded deed stands in place of recording. This is true. And I think it is deeply to be regretted, that it is so. For it is plain, that seizing upon the fact, that the Act was intended to prevent frauds, the Court has undertaken to be wiser than the Legislature, and to interpolate a provision, that a deed not recorded should not only be good between the parties, but also as against a purchaser with notice. That this was a most unwarranted assumption, on the part of the Court, in the beginning, is most true. It is probable it began under the Act of 1698, when the error was not as flagrant, as under the Act of 1785 : it was continued under it, without adverting to its words, and was irrevocably fastened upon the country in Tart vs. Crawford, 1 McC. 265, and many subsequent cases.
But this does not help the doctrine which is contended for and about to be established in this case, unless it could be shown, that recording after the expiration of six months, and before the sale to the purchaser at the sheriff’s sale, is notice. It must be remarked here that Hagood, the purchaser at the sheriff’s sale, recorded his deed within seven days after his purchase, so that he claims under a subsequent purchase duly recorded. It never has been decided, that recording after the time limited by law, is notice. I concede that recording according to laio is notice to the world. This is fully settled, in an opinion of the late Judge Nott, in the case in Equity, Thompson Swan vs. Thos. Reed and Thos. Ligon, decided at Columbia, about 1827, and which will, I hope, see the light, in a note to this case. But beyond this, it is impossible to carry the principle. In the case of Martin vs. Sale, Bail. Eq. 6, Judge Nott states the principle as I have conceded it, “ that recording was notice to all the world but this dictum, although used in relation to a mortgage recorded out of time, cannot be regarded as a decision on that point, which was unnecessary to the decision of the cause, for notice had been abundantly proved, and the Court held that to be enough to give the mortgage effect, and especially as the defendant was not regarded “ a subsequent bona *467 fide purchaser for valuable consideration.” Sure am I, if Judge Nott’s clear perception of a legal point had ever been properly turned to the matter, he never would have uttered such a legal opinion in reference to a state of facts which never, before or since,.was supposed to be sufficient to justify its application.
The assertion, that a deed not recorded in time shall yet be good against a subsequent purchaser whose deed is duly recorded, is directly against the words of the Act of 1785. The true principle by which we are to be governed, is to be found in Latouche vs. Dunsany, 1 Sch. and Lef. 137, 157, 160. The effect of the Irish Registry Act, 6 Anne, Ch. 2, as settling the priority of incumbrances, was in that case presented for the judgment of that great Chancellor, Lord Redesdale (perhaps better known to the world as Mr. Mitford). In it he expresses a very distinct opinion against the effect of registry, as notice, and which I admit, so far as a regular and legal registry is concerned, is overruled by our cases. But surely it cannot be, that the weight of his great authority is further to be diminished, by holding that a deed not recorded in time, is notice. His reasons are, I think, unanswerable, that it should not be so regarded. He says, “ that the registry is to be considered as notice, to all intents and purposes, is, I think, what one would riot be inclined to hold, when one sees the effect of so considering it: if it is to be considered as notice, because it is an intimation of the existence of a deed put upon record, it must be notice of every thing contained in that deed, for a party must be bound to inquire after the contents of that deed : if it be notice, it must be notice whether the deed be duly registered or not: it may be unduly registered, and if it be so, the Act does not give it a preference, and thus this construction would avoid all the provisions in the Act for complying with its requisites.”
The Irish Registry Act merely requires a memorial of the deed to be registered, and not the deed itself, and that makes an essential difference between our Act and it on the question of notice.
*468 But I rely upon the case more for the sake of pointing out the distinction between our Acts of 1698 and 1785.
I have already said that our Act of 1698 is like the Irish Act: — our Act of 1785 is like the English Registry Acts. It requires, like them, that deeds should be recorded in a limited time. Lord Redesdale notices this-difference, and points out the effect at page 160 — “ The two countries” (Ireland and England) “ have adopted a different policy, and even in the Register counties in England the Register Acts have a limitation in respect of the time, within which the deed must be registered, and if not registered within that time, it is as nothing; there are no words giving it priority according to the registry in the manner of the Irish Act.” This is the precise difference between the Acts of 1698 and 1785: under the latter, a deed not recorded within six months,, is as nothing ; under the Act of 1698, the first recorded deed had effect. That all our cases regard recording after the expiration of the time, as nothing, will be apparent from an examination. I shall refer to a few. In the case of O'Neal vs. Cothran and others, 4 Eq. Rep. 552, the deed of the complainant was not recorded within six months, but before the sheriff's sale to the defendants as the property of the grantor. The complainant succeeded,, on proof of express notice: the recording after time, but before the sale, was not at all relied on in the whole case. In McFall vs. Nherrard, Harp. 295, the deed was recorded after the expiration of six months from its execution but before the sale by the sheriff. It was treated throughout the case as if not recordedand the defendant’s de-fence succeeded on the ground alone, that the purchaser had express notice before he bought. In McCartney & Gordon vs. Pagson and wife, 2 Hill, 181 — 2, one of the questions was, whether a marriage settlement executed 16th July, 1806, but not recorded until 14th October, 1809, was good against creditors whose debts were contracted in 1827: — the Chancellor, DeSaussure, held it was not, and the Court of Appeals, in affirming his decision, make this remark — “ For the deed of marriage settlement executed according to the stipulations of the bond, was *469 not lodged to be recorded in the Secretary of State’s office, until long after the time limited by the Act of ’85, and is therefore void as against the creditors of the husband.” That this is a most decisive authority, can hardly be questioned : for the marriage settlement Act of 1785, like that of the same year settling the manner of recording deeds, requires that marriage settlements should he recorded within a limited time, and if not, against subsequent creditors they are declared fraudulent, and the property thus settled is to be liable for the payment and satisfaction of such debts, as if no such deed, contract or settlement had existed. Under this Act, as under the other; the deed of settlement is good between the parties ; and express notice to the creditor will stand in place of recording: — hut as in the case to which I have referred, recording after time, but before the accrual of the debt, will not. The same rule must also apply to the recording law of ’85.
In Segurs vs. Powers, Dec. Term, 1829, Columbia, Judge Johnson certainly had in his mind the very doctrine for which I am contending. For in the very beginning of his opinion, he says: “ Both of these parties claim the land under a formal chain of title from James Kelly, in whom the title is admitted to have been: none of the deeds under which the plaintiff claims, had been recorded within the time prescribed by law, and was therefore void under the Act, as to the defendant, if he was a purchaser for valuable consideration without notice.” It is true, on examining the case, it appears the plaintiff’s deed from Kelly never was recorded; and therefore the point indicated by the opinion was not in the case. It, however, serves my purpose, by showing that in the mind of a very eminent Judge, not recording in time, and not recording at all, were regarded as the same, and undistinguishable, as they really are.
But it is said the party had no estate in the land at the levying of the execution, having previously conveyed to the plaintiff’s intestate: and such a notion has the countenance of Jackson vs. Town, 4 Cow. 509, 605; Jackson vs. Terry, 13 Johns. 471; 17 Wend. 25; but the New-York registry Act, under *470 which they were decided, makes the deed void, unless recorded before the deed under which a subsequent purchaser claims. This was done in all those cases ; and well might the Court say there was no estate in the debtor, when the execution was levied. But our Act or 1785 expressly declares, that unless the deed be recorded, within the time limited, as against creditors, or a subsequent purchaser whose deed is duly recorded, it shall not pass, alter or change the estate of the grantor. In such a case, therefore, when the deed is not recorded in time, the debtor’s estate is unchanged, it still remains in him, notwithstanding his deed, so far as the third persons designated by the Act are concerned. The New-York cases have, therefore, no sort of application to this case arising under the Act of 1785. That Act furnishes its own- rule, by the words it has used, and according to them, the creditor and purchaser, Ha-good, is entitled to the land under his duly recorded deed of purchase, notwithstanding it had been conveyed by a deed not recorded in time, before the levy of the execution.
Withers, J. concurred.