JACKSON, ex dem. Merrick, vs. POST.

A purchaser, for a valuable consideration, cannot hold the land conveyed to him, if, previous to the conveyance to his grantor, the premises were conveyed to a third person by deed, and such deed be *recorded* anterior to the last purchase, although the deed to his grantor be *first recorded*.

Both deeds being on record at the time of the last purchase, the purchaser has *notice* that the grantee under the *prior deed*, although last recorded, intends to assert his title ; being thus put on inquiry, the purchaser is deemed to have such notice of the prior deed as to render his purchase *mala fide*.

A purchaser of lands at a sheriff's sale, under a judgment and execution, will hold the same, although the defendant in the execution had, previous to the judgment, *sold* and *conveyed* the lands by deed, provided that the deed from the sheriff is *recorded* previous to the record of the deed from the debtor in the execution, unless the purchaser at sheriff's sale had *actual notice* of the prior deed. *The cases of Jackson v. Town*, 4 *Cowen*, 599, *and Jackson v. Post*. 9 *id*. 120, *commented on and explained*.

Still, if the deed from the defendant in the execution be recorded *before* the purchaser at the sheriff's sale conveys away the property, the grantee of such purchaser is chargeable with notice of the *prior deed*, although the sheriff's deed be recorded before the prior deed is put upon record.

A *parol agreement*, by the owner of the land, that another shall purchase it and that he will surrender all claim to it, cannot be given in evidence in a court of law, in an action subsequently brought by such owner to recover possession of the land from such purchaser.

A voluntary conveyance is not void as against creditors, on the ground that the grantor at the time of the conveyance is indebted, if it be shown that the *residue* of the real estate of the grantor was amply sufficient to pay his debts.

THIS was an action of *ejectment*, tried at the Madison circuit in March, 1827, before the Hon. NATHAN WILLIAMS, then one of the circuit judges.

The lessor of the plaintiff, *Thomas Merrick, 2d*, claimed to recover 20 acres of land, conveyed to him by his father, *Charles Merrick*, by deed bearing date 25th April, 1807. The defendant held the premises by title derived under a sheriff's sale, by virtue of a judgment against *Charles Merrick*, in favor of D. Hubbard and S. G. Willard, for $686,24, docketed on the 9th August, 1808. The sale under the judgment took place on the 1st April, 1809, when 89 acres of land (of which the 20 acres claimed by the plaintiff are a part) were struck off to one Jacob Ten Eyck for the sum of $705,07, and con-

veyed to him by deed executed by the sheriff, as of the 1st April, 1809, which deed was *duly recorded on* 21st *April*, 1809. When this deed was put upon record, the deed from Charles Merrick to the plaintiff was *not recorded,* nor was it put upon record until 25th April, 1812. Ten Eyck sold the 89 acres purchased by him at sheriff's sale, on 25th September, 1813, for the consideration of $1600, to D. Elliot, from whom, after two intervening owners, the premises came to the defendant by deed bearing date 19th April, 1817. The deed from Ten Eyck and the subsequent conveyances severally contained a covenant of warranty. At the time of the sheriff's sale and previous to the purchase, *Ten Eyck had notice of the deed* from Charles Merrick to Thomas Merrick, 2d. The defendant *offered to prove* that, at the time of the Sheriff's sale Ten Eyck was requested, by Charles Merrick and by *Thomas Merrick, 2d,* to bid in the farm and to give Charles Merrick an opportunity to *redeem* the same ; that Thomas then stated to him that his deed had not been recorded, and that he would give up all claim to the 20 acres if Ten Eyck would comply with their request ; and that Ten Eyck agreed to do as requested. That thereupon the 89 acres were sold by the sheriff and purchased by Ten Eyck, and an agreement in writing entered into by Ten Eyck and *Charles Merrick.* whereby Ten Eyck covenanted to convey the 89 acres to Charles Merrick, provided he was paid the amount of his bid with the interest thereof, by the 1st day of December, 1809 ; and Charles Merrick agreed then to surrender the possession of the land in case of default of payment—and the defendant offered to produce the agreement in court : which evidence thus offered to be given was objected to, on the ground that the plaintiff was not a party to the agreement, and the objection was sustained by the judge. The defendant excepted. The defendant proved that *Thomas Merrick, 2d,* resided on the farm of 89 acres *with his father,* previous to the date of the deed to him in 1807, and continued to reside there subsequent to that conveyance ; that he and his father cultivated the farm together, living in the same family—all the crops were secured in the same barn and fed out to their cattle ; that the 20 acres conveyed to Thomas was principally meadow land ; that there

was no partition fence between the 20 acres and the residue of the farm, no separate cultivation, and that the farm was managed in the same way *after* as *previous* to the deed to Thomas; there being no apparent change in that respect. The value of the 69 acres, exclusive of the 20 acres claimed by the plaintiff at the time of the sheriff's sale, was estimated at from $1000 to $1500. The defendant also produced an exemplification of the record of the judgment against Charles Merrick, under and by virtue of which the sheriff's sale took place, by which it appeared that one of the causes of action set forth in the plaintiff's declaration was a promissory note made by Charles Merrick to the plaintiffs, for the sum of $600, bearing date 17th March, 1807, and the defendant insisted that the plaintiff was not entitled to recover, because Charles Merrick having contracted the debt on which his farm was sold, *previous to the date of the deed executed by him to his son,* such deed was fraudulent and void as against creditors; upon which the judge ruled that the conveyance to the plaintiff was not fraudulent in law, as it appeared in proof that the residue of the farm was of a value more than sufficient to pay the debt. The defendant also insisted that the plaintiff was not entitled to recover, 1. Because he, the defendant, and those through whom he derived his title, were *bona fide* purchasers for valuable consideration, *without notice to either of them, except Ten Eyck, of the lessor's claim;* that the *constructive notice* arising from the record of the deed to the lessor was more than neutralized by the record of the deed from the sheriff to Ten Eyck, which being *first recorded,* showed that Ten Eyck had the better title, and that consequently, without other notice than that derived from the records, he, the defendant, and those under whom he derived title, were, with the exception of Ten Eyck, *bona fide* purchasers, and entitled to the protection intended to be secured by the *registry act;* and 2. That *Charles Merrick* being in possession of the premises in question, before and at the time of the recovery of the judgment against him, and at the time of the levy and sale, had such an interest in the premises as was the subject of a sale on execution, and upon which the judgment was a *lien.* The judge overruled these several objections, and charged the jury that the plaintiff

was entitled to their verdict: to which decisions and charge the defendant excepted. The jury found a verdict for the plaintiff. The defendant asks for a new trial.

*J. A. Spencer*, for the defendant, insisted that Ten Eyck having made the purchase of the 89 acres not only with the knowledge but at the request of *Thomas Merrick*, cannot be considered as having unduly obtained title to the land and inequitably gained a preference over a prior purchaser, whose deed he knew was not recorded ; the purchase having been made at the request of the prior purchaser, and the terms of the agreement under which it was made fully carried into effect. In *Storrs* v. *Baker*, 6 *Johns. Ch. R.* 166, it was held that a person having the legal title to land, who acquiesces in the sale of it by another claiming or having color of title to it, is *estopped* from afterwards asserting his title against a purchaser, especially if he has advised and encouraged the parties to such sale to deal with each other. Chancellor Kent, in delivering his opinion in that case, quoted what was said by Mr. J. *Lawrence*, in 6 *T. R.* 556, that he recollected a case in which Lord *Mansfield* would not suffer a man to recover, *even in ejectment at law*, who had stood by and seen the defendant build on his land. Ten Eyck, in reference to the prior deed, was as much a *bona fide* purchaser as if he had purchased without notice, and the evidence of the agreement in respect to his purchase ought, therefore, to have been received by the judge. But if Ten Eyck is not entitled to be considered as a *bona fide* purchaser, by reason of his having had notice of the prior deed, his grantee and the subsequent purchasers are not affected by that notice, as no principle is better settled than that a purchaser for a valuable consideration, without notice, has a good title, though his grantor obtained a conveyance by fraud. 10 *Johns. R.* 185. The fact of the prior deed having been placed on record previous to the conveyance from Ten Eyck, does not help the lessor of the plaintiff, because the same records which gave notice of that deed also showed that Ten Eyck's deed was first recorded, and of course that he had the better title. The counsel also insisted that the deed to the lessor of the plaintiff was void as

respects creditors, having been executed when the grantor was heavily indebted ; and further, that *Charles Merrick* having remained in possession and occupied the premises in question in the same manner after as before the conveyance to his son, the judgment against him was a lien upon the land, his interest in it was the subject of sale, and entitled the purchaser to his possession, as part of the title.

*S. L. Edwards*, for the plaintiff, supported the decision of the circuit judge in excluding the testimony offered by the defendant. The title of the lessor to the 20 acres could not be divested by *parol*, and still that must have been the sole object of the proof. The judge was right also in ruling that the deed from Charles Merrick to his son was not fraudulent as to creditors, under the evidence in the case, as it was shown that the residue of the farm was of sufficient value to pay his debts. He also insisted that the defendant and those through whom he claimed were not *bona fide* purchasers : Ten Eyck had *actual notice* of the prior deed, and the others had *constructive notice,* as the deed to the lessor was recorded previous to the time when Ten Eyck conveyed. Although the subsequent purchasers would see by the records that Ten Eyck's deed was first recorded, they would also see that the lessor's deed of an anterior date was on record, which was enough to put them on inquiry, and if without inquiry they purchased, they did so at their peril. He further insisted that Charles Merrick, at the time of the rendition of the judgment against him, had no interest in the 20 acres, the premises in question, upon which the judgment could operate as a lien, or which was the subject of sale ; he had conveyed the property previous to the docketing of the judgment, and at the time of the sale he had not even possession of it ; the delivery of the deed to his son was a delivery of possession of the property. The counsel relied upon the former decision of this court in the same case, when a new trial was granted after a verdict for the defendant. 9 *Cowen,* 120. He also quoted 4 *Cowen,* 604, and 6 *Wendell,* 225, and cases there cited.

PER CURIAM. The case is substantially the same as when heretofore before us, as reported in 9 *Cowen*, 120. It differs in some particulars: 1. The defendant offered to prove an agreement by parol of the plaintiff, that he would give up all claim to the 20 acres if Ten Eyck would become the purchaser at the sheriff's sale, and give *Charles Merrick* time for redemption. This evidence was excluded, and in excluding it the judge was correct, and assigned a good reason for the decision; *Thomas Merrick* was not a party to the written agreement, and it cannot be contended that a parol agreement to release a title to land is valid. The alleged agreement by T. Merrick was an agreement by parol to give up his claim to land which had been conveyed to him by deed; it was void by the statute of frauds.

The judge was right also in deciding that the deed from C. Merrick to T. Merrick was not void in law as made in fraud of creditors, because, although the grantor was indebted, there was property enough left to pay his debts. It was not necessary, in 1829, when this cause was tried, to submit such a question to the jury, nor does it appear that the defendant's counsel requested the judge so to submit it.

Although the judge may have erred in over-ruling the position that C. Merrick, being in possession at the time of the levy and sale, had an interest which was the subject of sale on execution; such error did not prejudice the defendant: it was an abstract proposition which could have no bearing on the case. Had Charles Merrick been the defendant in an action of ejectment brought by Ten Eyck, such a proposition would have been appropriate. Actual possession is evidence of title: Ten Eyck having purchased C. Merrick's right, was entitled to the possession as against him: Ten Eyck came into his place, and took all his interest. But Charles Merrick had no right to the possession as against the present plaintiff; of course his grantee could have none derived through him. Had the judge therefore informed the jury that C. Merrick being in possession had an interest which was the subject of a sheriff's sale, he must also have told them that C. Merrick had no right to the possession against the legal owner, T. Merrick.

There is another particular in which this case differs from the former. It there appeared that all those through whom the title passed from Ten Eyck to the defendant, and the defendant himself, had notice of T. Merrick's deed. That evidence is not in this case ; but enough appears to put the subsequent purchasers upon inquiry, and to show that Ten Eyck, under whom the defendant claims, had no title to the twenty acres in dispute. · The object of the recording acts is to prevent frauds—to prevent the person having title to land from selling it more than once, and thereby defrauding one or more of the purchasers. The object of recording is to give notice to all the world that the title has passed from the vendor' to the vendee. If the vendee neglects to record his deed, in consequence of which another person purchases *bona fide*, such vendee, so neglecting to record his deed, loses his title ; but if the second purchaser has *actual notice* of the first conveyance, he is not a *bona fide* purchaser. The record of the first deed is constructive notice of the fact of the existence of the deed ; if, however, actual notice has been given to the second purchaser, he cannot complain of want of constructive notice. Notice to the second purchaser, whether actual or constructive, that the land has been previously sold and conveyed, deprives him of the character of a *bona fide* purchaser. It is a conceded fact in the present case, that Ten Eyck had notice of the present plaintiff's title at the time of the sheriff's sale. He was not, therefore, in law, a *bona fide* purchaser ; on the contrary, he acquired no title to the twenty acres. As to those twenty acres, Ten Eyck's deed was void—as much so as if T. Merrick's deed had been recorded. Had Ten Eyck, therefore, remained in possession, and been the defendant instead of the present defendant, he could not make any plausible defence. It may be said, however, that the *defendant* had no notice of T. Merrick's deed, except the record, and that the same record informed him that Ten Eyck's deed was *first recorded*, and therefore took precedence. It is true that Ten Eyck's deed was first recorded, but it is also true that T. Merrick's was recorded *before* Ten Eyck conveyed the premises. The act requiring deeds to be recorded does not say (as the act requiring mortgages to be registered does) that the deed

first recorded shall have preference, but that the unrecorded deed shall be considered void as against a subsequent *bona fide* purchaser. When, therefore, the present defendant saw by the record that T. Merrick's deed was anterior in date to Ten Eyck's, he was bound to inquire whether Ten Eyck was a *bona fide* purchaser. He did not become such by the mere fact of putting his deed first on record. If the defendant had made such inquiry, he could not have failed to have ascertained the true state of the case, and to have learnt that Ten Eyck had in fact no title as against T. Merrick, the present plaintiff. In *Tuttle* v. *Jackson*, 6 *Wendell*, 226, it was said, by Chancellor Walworth, "If the subsequent purchaser knows of the unregistered conveyance at the time of his purchase, he cannot protect himself against that conveyance; and whatever is sufficient to make it his duty to inquire as to the rights of others, is considered legal notice to him of those rights." And surely the record of T. Merrick's deed was sufficient to make it the duty of all subsequent purchasers to inquire as to the rights of T. Merrick. The fact that his deed was recorded subsequent to Ten Eyck's, conveyed an intimation that he intended to assert his title. It is therefore perfectly clear to our minds that the decision of the judge at the circuit was right, without considering the authority of the former decision. We have heretofore had occasion, in *Jackson* v. *Chamberlain*, 8 *Wendell*, 626, 7, to speak of this case as reported in 9 *Cowen*, 120, and of *Jackson* v. *Town*, 4 *Cowen*, 599. In the latter case the plaintiff claimed to recover under a sheriff's deed, and his right of recovery depended upon the fact that Eleanor Town had title to the premises when the judgment was docketed under which the sale was made. The only evidence of title consisted of the fact that Eleanor Town had been some four or five years in possession; but she had abandoned the possession two years before the cause of action accrued upon which the judgment was recovered. No paper title was shown in E. Town. Several months after she abandoned the possession, she conveyed to her daughter, the defendant, who took possession some three years afterwards. The learned judge, who delivered the opinion of the court in the first place, placed the decision upon true ground—the

*want of title* in E. Town. Had he left it there, the correctness of that decision, we apprehend, could never have been doubted. In order to fortify the case, he undertook to show, that if E. Town had had title when she occupied the premises, she had parted with it before the judgment against her under which the plaintiff claimed. The reasoning of the learned judge on that point is not satisfactory, and in our opinion it fails to prove the proposition that E. Town had legally conveyed her title. The deed to *Lydia Town* conveyed all the interest of the grantor to the grantee without being recorded ; as between the parties and others having notice, it was valid, but as against subsequent *bona fide* purchasers, it was void. On the supposition that Eleanor Town had title when she conveyed to Lydia Town, there can be no doubt that, had she conveyed to the lessor, Stewart, at the time when he took the sheriff's deed, if his purchase was *bona fide* without notice of the deed to L. Town, it would have been the better title ; for the unrecorded deed was by the statute fraudulent and void against subsequent *bona fide* purchasers for valuable consideration. A judgment and sale under it are a species of conveyance, and equally effectual to transmit the title of the defendant in the judgment, as a deed from such defendant. As, therefore, the lessor had no notice of the defendant's deed when he took the sheriff's deed, he took all the title which the judgment debtor was capable of conveying to a *bona fide* purchaser. It is therefore clear to us, that if E. Town had title, her deed to her daughter, although good as between the parties, was void as to a subsequent *bona fide* purchaser, which the lessor of the plaintiff was. The case was, however, in our opinion, rightly decided upon the first ground, to wit, absence of any proof of title in E. Town. When this cause was before this court formerly, as reported in 9 *Cowen,* 120, the preceding point in the decision of *Jackson* v. *Town* was cited, and apparently relied on. It was unnecessary to resort to that ground, as it appeared then as it does now—that Ten Eyck, when he purchased, had full notice of the previous deed to the plaintiff. His sheriff's deed had the same force and efficacy as a quit-claim deed from C. Merrick of the same date would have

had ; and having notice, he purchased with as full knowledge of the plaintiff's deed as if it had been recorded. In such cases we consider the lien of the judgment as of no force, by way of giving priority ; it is the sale under the judgment which is effectual, and the lien is not regarded as an incumbrance, but only as an ingredient in the conveyance. The facts of this case therefore justified the former decision, and so we apprehend they do the present.