## Case No. 11,124.

### PICKERT v. The INDEPENDENCE.

[9 Ben. 395;[1] 55 How. Pr. 205.]

District Court, S. D. New York. March, 1878.

MORTGAGE—PURCHASE WITH NOTICE—STATE LAW.

1. Under the act of the legislature of New York passed April 28, 1864 (Laws N. Y. 1864, p. 993), in regard to filing in the office of the auditor of the canal department a mortgage on a canal-boat and refiling a copy, no filing is necessary, after the original filing of the mortgage and the first filing of the copy, with the proper statement, in order to make the mortgage a continuing security, and there need not be a subsequent refiling.

2. The act of 1864 has never been amended so as to require a copy of the mortgage, with a statement of interest, to be again filed within thirty days next preceding the expiration of each and every term of one year after the filing of the mortgage.

3. The provisions of the act of the legislature of New York passed April 29, 1833 (Laws N. Y. 1833, p. 402), so far as they apply to canal-boats, are superseded and replaced by those of the act of 1864; and the filing of mortgages on canal-boats depends wholly on the act of 1864, and not at all on the act of 1833.

4. A person is not a purchaser of a canal-boat in good faith, within the meaning of the act of 1864, when he purchases with notice of a prior mortgage on the boat.

5. A person who has notice enough to put him on inquiry is bound to make inquiry, and will be held to have had notice of everything to which such inquiry would have reasonably led.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.
M. M. Budlong, for claimants.

BLATCHFORD, District Judge. On the evidence I am of opinion that there is a considerable sum of money still due to E. Remington & Sons on the mortgage, and that the notes given to them in March, 1874, were not given in settlement or discharge of the mortgage. Prima facie, the claimants are entitled to retain possession of the canal-boat under the mortgage.

The provisions of the act of April 28, 1864 (Laws N. Y. 1864, p. 993), in regard to filing in the office of the auditor of the canal department a mortgage on a canal-boat, and refiling in the same office a copy thereof, with a statement of interest, within thirty days next preceding the expiration of one year from the original filing of the original mortgage, are the same as the provisions in the act of April 29, 1833 (Laws N. Y. 1833, p. 402), in regard to filing, in the office of a register, a county clerk, or a town clerk, a mortgage on goods and chattels, and refiling in the same office a copy thereof, with a statement of interest, within thirty days next preceding the expiration of one year from the original filing of the original mortgage. It was the law of this state, under the act of

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

1833 (Newell v. Warren, 44 N. Y. 244), that no filing after the original filing of the mortgage and the first filing of the copy, with the proper statement, was necessary in order to make the mortgage a continuing security, and that there could not be a subsequent refiling. The same rule must apply to the canal-boat statute. By the act of May 13, 1873 (Laws N. Y. 1873, p. 767), the act of 1833 was so amended as to require a copy of a mortgage on goods and chattels, with a statement of interest, to be again filed within thirty days next preceding the expiration of each and every term of one year "after the filing of such mortgage." The construction in Newell v. Warren, made in 1870, was thus recognized, but no similar amendment was made to the act of 1864. In the present case the act of 1864, as thus construed, was complied with.

It is urged, for the libellant, that it was necessary, in addition, to file the mortgage and renew it by refiling, in accordance with the act of 1833, because, although the mortgaged property was a canal-boat, it was also goods and chattels, and the mortgagor resided, when the mortgage was executed, in this state, in the town of Mohawk, Herkimer county. I am not referred to any decision of the courts of the state directly upon the point, but the general practice, I understand, has been to file mortgages on canal-boats only in the office of the auditor of the canal department. The act of 1864 was a substitute for the act of April 15, 1858 (Laws N. Y. 1858, p. 396). The act of 1858 provided, that any person having any lien or incumbrance on any canal-boat, by a chattel mortgage, "duly filed," could file in the office of the auditor a statement of the date, circumstances, nature and amount of his claim, with an affidavit thereto; and that "all claims and liens by chattel mortgage, a statement of which shall be filed as herein provided, shall, from the time of such filing, have preference and priority over all other claims and liens, in the same manner and to the like extent of claims and liens arising on chattel mortgages filed and entered in towns where the mortgagor resides, but shall not have any priority over existing liens and claims." The act of 1858 was based on the idea of a double filing. It was only where a chattel mortgage had been "duly filed," that is, filed under the act of 1833, that the statement and affidavit could be filed in the office of the auditor, under the act of 1858. When both filings had taken place, then, under the act of 1858, the lien by the mortgage was to have preference and priority over all other claims on the canal-boat, except existing claims, to the same extent that claims under mortgages on other property, filed under the act of 1833, would have, under that act, as to such other property, preference and priority. In other words, as to canal-boats, there was made necessary, by the act of 1858, a double filing, and, until it had taken place, mortgages on canal-boats

could not acquire the standing which mortgages on other goods and chattels acquired by a compliance with the act of 1833 alone. Then came the act of 1864, superseding the act of 1858 and its provisions, and providing for a single filing in the case of canal-boats, and that in the office of the auditor, on the same plan, as to filing and refiling, as that of the act of 1833 in regard to other goods and chattels. Still more, the act of 1864 went on to provide as follows: "All claims and liens by chattel mortgage, which shall be filed as herein provided, shall, from the time of such filing, have preference and priority over all other claims and liens, but shall not have any priority over existing claims and liens." This enactment strikes out the words, "in the same manner and to the like extent of claims and liens arising on chattel mortgages filed and entered in towns where the mortgagor resides," and manifests an intention, in connection with the other provisions of the act, to dissever the filing of mortgages on canal-boats from the act of 1833, and leave them to depend wholly on the act of 1864. It is enacted, that, when they are filed, as provided in the act of 1864 (which is a filing in the auditor's office alone, and not, as in the act of 1858, a filing of something in the auditor's office in conjunction with a previous filing of something else elsewhere), they shall, from the time of such filing in the auditor's office, have preference over all claims but existing claims, and, of course, preference over the claims of subsequent purchasers and mortgagees. If some other filing elsewhere is necessary, effect cannot be given to the enactment that the filing under the act of 1864 gives the preference and priority. This makes the provisions of the act of 1833 repugnant to those of the act of 1864, so far as canal-boats are concerned, and makes it necessary to hold, that the provisions of the act of 1833, so far as they apply to canal-boats, are superseded and replaced by those of the act of 1864.

E. Remington & Sons complied, therefore, with all the provisions of law required to make their mortgage a valid continuing security, as against the libellant, even if he was a purchaser in good faith. A person is not a purchaser in good faith, within the meaning of the statute in question, when he purchases with notice of the prior mortgage. Hill v. Beebe, 13 N. Y. 556. In the present case, the libellant claims to have purchased the boat from his mother, who was the owner and the mortgagor. He testifies that he asked her if there were any claims against the boat; that she said the parties of whom she bought the boat were owing her; and that she said nothing about having given a mortgage on the boat. The mortgage was given to E. Remington & Sons for the purchase money of the boat, when the libellant's mother bought it. The libellant's father and mother testify to the same conversation between him and his mother. After such conversation the libellant went to the auditor's office at Albany, and inquired if there were any claims against the canal-boat. The person in charge took down a book, and, after consulting it, replied that there had not been since 1874. The libellant left without inquiring further. All this was sufficient notice to the libellant. He was bound to inquire further. He had notice that the persons who sold the boat to his mother had had a mortgage on the boat, and that such mortgage had been filed in the auditor's office, and that his mother claimed that the mortgage had been paid. He was bound to seek out those parties, whose names were on the book, which, through the clerk, he was consulting, and ascertain from them whether they regarded the mortgage as paid. If he had done so, he would have learned that the mortgage was, in fact, not paid. Jackson v. Post, 15 Wend. 588. His conduct shows that he knew he was bound to inquire, and that he was advised there had been a mortgage filed, but he evidently relied on the view that the mortgage had run out because not refiled from year to year. He had notice enough to put him on inquiry, and he was bound to follow up his inquiry by going to E. Remington & Sons, who were stated in the record before him to be the mortgagees. This was notice to him of everything to which such inquiry would have reasonably led. Carr v. Hilton [Case No. 2,437]. The libel is dismissed, with costs.