DES MOINES, JUNE TERM, A. D. 1876.

IN THE THIRTY-FIRST YEAR OF THE STATE.

| 43 | 11 |
|----|----|
| 78 | 91 |
| 43 | 11 |
| 107 | 20 |
| 43 | 11 |
| 112 | 332 |
| 43 | 11 |
| 115 | 16 |
| 43 | 11 |
| 118 | 21 |
| 43 | 11 |
| 134 | 684 |

PRESENT:

HON. WILLIAM H. SEEVERS, CHIEF JUSTICE.
" JAMES G. DAY,
" JAMES H. ROTHROCK,  } JUDGES.
" JOSEPH M. BECK,
" AUSTIN ADAMS.

RANKIN v. MILLER ET AL.

1. **Public Lands:** ENTRY: TITLE. Where A had entered a certain tract of land and B, who had previously entered an adjacent tract, subsequently induced the register to change the number of the range so that B's entry was made to include that of A: *Held*, that it was not competent for the register to make the change, upon B's representation of mistake, and that, the title of the government having passed to A, it could make no other disposition of the land.

2. ———: PATENT. The patent of the government vests in the patentee the perfect legal title, which relates back to the date of entry; the entry

Rankin v. Miller.

and certificate transfer to him all the property of the government in the land and confer upon him all the equity therein, which is an absolute and unconditional right to the land.

3. ——: ——: WHEN VOID. A patent issued to land which had previously been sold by the government is absolutely void, and no right is acquired thereunder.

4. Recording Act: NOTICE: SUBSEQUENT PURCHASERS. The *subsequent purchasers* who are protected by the recording act against the grantees of prior unrecorded deeds are those who claim from a common source of title with the latter. No protection is intended against an independent title, distinct from that on which the recorded deed is based.

5. Equity: TITLE: To entitle one to recover the ownership of lands upon the ground of superior equity in himself, he must have some right other than the acquisition of a void title in ignorance of the rights of another.

6. ——: CONVEYANCE: MISNOMER. In an action to quiet title, where it appeared that plaintiff's ancestor was described in the deed through which he claims by a misnomer, and he was identified as the party thus wrongly described, it was *held* that correction of the mistake should be decreed.

7. Practice in the Supreme Court: ABSTRACT: ARGUMENT. Errors discussed in argument but not assigned, or based upon facts not appearing in the abstract, will not be considered by the Supreme Court.

8. Guardian and Ward: SALE: NOTICE TO WARD. Under the Revision a sale by a guardian of lands belonging to his ward, without giving him ten days notice of the application for an order to sell, or of the hearing upon the application, was absolutely void.

9. ——: ——: STATUTE OF LIMITATIONS. Section 2265 of the Revision, limiting to five years the period within which guardians' sales may be questioned, does not afford protection to those claiming under a void sale.

10. Tax Sale: ACTION TO REDEEM: MINOR. An action by a minor to redeem from a tax sale is not barred until one year after he has attained his majority.

11. Guardian and Ward: TAX TITLE: TRUSTEE. A guardian having acquired a quit-claim deed from the purchasers at tax sale of his ward's land, and the deed reciting that he takes in the capacity of guardian, the interest he acquires will enure to the ward.

*Appeal from Black Hawk District Court.*

THURSDAY, APRIL 6.

ACTION in chancery to establish and quiet in plaintiff the title to the undivided eleven-eighteenths of two hundred and

eighty acres of land in Black Hawk county. The relief was granted as to one hundred and sixty acres of the land, and denied as to the remainder. Both parties appeal. The facts of the case are stated in the opinion.

*Alford & Elwell*, for plaintiff.

The recording of an instrument defectively acknowledged and where the certificate required in case of acknowledgments before a justice of the peace in another state is omitted, does not impart notice to subsequent purchasers for value. ( *Wickersham v. Reeves*, 1 Iowa, 413.) Such defects are helped by curative acts subsequently passed. (*Brinton v. Seevers*, 12 Iowa, 389.) As between the owners of a prior equitable title derived from the government and another who has acquired from the same source a subsequent legal title for value and without notice, the latter will be preferred. (*Lindley v. Haws*, 2 Blackf., 554; *Brush v. Ware*, 15 Peters, 109; *Brown v. Chiles*, 10 Id., 177.) A purchaser from a patentee for a valuable consideration, without actual notice of a prior entry of the same land, will be protected in equity though the patentee's survey was not founded on an entry. (*Deixel v. King*, 7 Leigh, 393.) Where the jurisdictional facts are stated on the face of the proceedings of an inferior court, they are presumed to be as stated. (*Cooper v. Sunderland*, 3 Iowa, 126; *Morrow v. Weed*, 4 Id., 88.) Where service of notice, although defective, has been adjudged sufficient by the trial court, the judgment will not be vulnerable to collateral attack. (*Shawhan v. Loffer*, 24 Iowa, 226; *Lyon v. Vanatta*, 35 Id., 525.)

*Boies & Couch*, for defendants.

Parol evidence to show who was intended to be the grantee of a deed, where there is a mistake in the christian name, is admissible. (*Henderson v. Hackney*, 16 Ga., 521; *Scanlan v. Wright*, 13 Pick., 523; 1 Greenl. on Ev., § 297.) The question of notice does not enter into a case which is one of conflicting entries of government land. (*Arnold v. Grimes*,

2 Iowa, 1; *Heirs of Kline v. Argenbright*, 26 Id., 493.) A patent for land, though granted in favor of the enterer, is really in favor of his vendees and inures to their benefit. (*Wallerston v. Bennet*, 18 La. Ann., 250.) Registration of a deed is notice only to those who claim title under the grantor in the recorded deed. (*Tyler v. Hammond*, 11 Pick., 193.) The "subsequent purchasers" of the various recording acts mean subsequent purchasers from the same grantor. (3 Wash. on Real Prop., 283; *Long v. Dollarhide*, 24 Cal., 218; *Tilton v. Hunter*, 24 Me., 29; *Bates v. Norcross*, 14 Pick., 224; *Ely v. Wilcox*, 20 Wis., 530.) The right to a patent once vested is equivalent to a patent issued; the certificate is as binding on the government as the patent, and the government is thereby deprived of the power to patent to any one but the purchaser. (*Cavender v. Smith*, 3 G. Greene, 349; *Moyer v. McCullough*, 1 Ind., 339; *Stark v. Starrs*, 6 Wal., 402.) The patent dates back to the time of the entry and vests a perfect title from that time. (*Arnold v. Grimes*, 2 Iowa, 1; *Stringer v. Young*, 3 Pet., 320; *Baynell v. Broderick*, 13 Pet., 436.) If two patents are issued for the same land and the earlier be obtained fraudulently or illegally it is void, and the same doctrine applies where there is but one patent so issued. (*Stoddard v. Chambers*, 2 How., 284; *Cunningham v. Ashley*, 14 Id., 377; *Perry v. O'Hanlon*, 11 Mo., 585.) The ignorance of a purchaser of a defective title cannot make that title good as against an independent and better right. (*Kerr v. Watts*, 6 Wheat., 550.) A valid entry of land gives an equitable title which cannot be divested by any act of the officers of the land office. (*Brill v. Stiles*, 35 Ill., 528.) Facts conferring jurisdiction, though appearing of record, may be contradicted *aliunde*. (*Cooper v. Sunderland*, 3 Iowa, 114; *Morr w v. Weed*, 4 Id., 77.) A guardian's sale, in the absence of notice of any kind to the parties in interest, is absolutely void. (*Good v. Norley*, 28 Iowa, 188; *Washburn v. Carmichael*, 32 Id., 475.) The guardian being bound to care for the property of his wards, purchase of their lands by him at tax sale, would inure to their benefit. (Blackw. on Tax Titles, 2d ed., 399.)

BECK, J.—The admitted or established facts, as we find them in this case, are as follows:

I.  Plaintiff's title is based upon the following conveyances and facts:

1.  November 24, 1853, Benjamin H. Towner entered, at the United States land office at Dubuque, all the lands in controversy, which are all in section 13, township 88, range 13 west, and received a certificate of entry, issued by the proper officer in the usual form.  On the 18th of October, 1858, a patent was issued to him for the lands.

2.  August 13, 1854, Towner sold and conveyed the lands to Daniel J. and Armstrong Rankin.  The deed is lost, but was filed and recorded in Black Hawk county.  The name *Ambrose* appears in the record instead of Armstrong, the christian name of one of the grantees.  This is alleged to be a mistake, either in the deed or record thereof, and it is averred that the conveyance was intended to be to Armstrong Rankin, who was intended to be described therein as one of the grantees.

3.  Armstrong Rankin died February 1st, 1855, leaving plaintiff as his only heir.  His widow, Nancy M., married Cyrus Hays in 1858.

4.  Daniel J. Rankin re-conveyed his undivided interest in the lands to Towner, who, in July 28, 1861, sold and conveyed the undivided one-half thereof then held by him to plaintiff's mother, Nancy M. Hays.

5.  In 1863 Nancy M. Hays died, leaving children by her second husband, Cyrus Hays, who subsequently married a second wife, Sarah, and died February 5th, 1868, leaving one child, the fruit of the last marriage.  Sarah Hays died in 1868.  Plaintiff, as heir of his father and mother, claims title to eleven-eighteenths of the land in controversy.

Alleged defects and objections to deeds, under which plaintiff's ancestors acquired title to the lands, will be hereafter stated when they come up for consideration in this opinion.

II.  The defendants' title rests upon the following conveyances:

1.  October 13, 1853, Abraham Turner, who is a defendant

in this action, entered one hundred and twenty acres of land in section 13, township 88, north range 12 west, at the United States land office at Dubuque, and received the usual certificate of entry, which is number 15,700.

2. On the 28th day of February, 1854, which it will be remarked was subsequent, in point of time, to the entry of the land under which plaintiff claims, the register of the Dubuque land office, upon application of Turner, changed the duplicate certificate of entry, No. 15,700, returned in his office, which had been issued upon Turner's entry of the land in section 13, township 88, north range 12 west, so that it read "north range 13 west," being the same description as that of part of the lands before entered by the grantor of plaintiff's ancestor.

3. A patent was issued to Turner for one hundred and twenty acres of land in range 13, June 15, 1854.

4. In 1868 a patent was issued to Turner for the land in range 12, and he afterwards sold and conveyed it to E. K. Ware and D. J. Coleman.

5. The defendants claim the land in section 13, township 88, north range 13 west, which is covered by Turner's patent, under that instrument and conveyances by Turner and his grantees.

6. They claim title to the other lands in controversy under a sale and deed by the guardian of plaintiff, made in 1865.

7. For a part of the same land they also set up a tax title based upon a sale of the land by the county treasurer, for 1862, for the delinquent taxes of 1860, and a treasurer's deed thereon, dated May 14, 1864. The remainder of these lands are covered by a tax deed recorded in 1865, which is also set up by defendants.

III. It is necessary to consider separately the conflicting claims and titles set up by the respective parties to the land in controversy. The first point of inquiry involves the validity of the conflicting patents covering a part of the land.

1. The validity of Towner's entry cannot be questioned.

At that time the full and perfect title to the land, both legal and equitable, was in the government. There had been no sale or transfer of any interest in it which defeated the right of the government to dispose of it, in the manner all public lands are disposed of as provided by law. If we admit that Turner's first entry of lands was made through mistake and the subsequent alteration of his duplicate certificate was without fraud, Towner's entry is not defeated by these considerations. Turner did not enter the land in range *thirteen*, and the certificate issued to him did not cover it. There was, therefore, no sale of that land to him by the government. The land was then sold to Towner and a proper certificate issued to him. Surely, it cannot be claimed that the register of the land office, simply upon the application of Turner, without proof of the mistake which the evidence shows was not made, had authority to change the entry and alter Turner's certificate so as to defeat Towner's prior entry. The register was clothed with no authority to change the entry, and in no case can such a thing be done by any officer of the government where the land to be covered by the change has been before sold. U. S. Rev. Stat., §§ 2369, 2372. The government having sold the land to Towner, no other disposition thereof can be made. *Arnold v. Grimes*, 2 Iowa, 1; *Cavender v. Smith*, 3 G. Greene, 349.

*(margin note: 1. PUBLIC LANDS: entry: title.)*

2. "The patent for lands belonging to the United States, when issued to a party, vests in him the perfect legal title, which relates back to the date of entry of the land. The entry of the land and the issuing of the certificate of location transferred to him at the time all the property held by the government in the land, and conferred upon him all 'the equity' thereto which is an absolute and unconditional right to the land." *Waters v. Bush*, 42 Iowa, 255; *Heirs of Kline v. Argenbright*, 26 Iowa, 493; *Cavender v. Heirs of Smith*, 5 Iowa, 157.

*(margin note: 2. ——: patent.)*

3. The patent to Turner, having been issued contrary to law, for land which had been before sold by the government, is void, and the patentee acquired no rights under it. *Stoddard et al. v. Chambers*, 2 Howard, 284;

*(margin note: 3. ——: ——: when void.)*

*Cunningham v. Ashley et al.*, 14 Howard, 377; *Wright v. Rutgers*, 14 Mo., 585; *Boring v. Simmons*, 5 Har. & Johns., 223; *Perry v. O'Hanlon*, 11 Mo., 585; *State v. Delesdinier*, 7 Texas, 76; *Todd v. Fisher*, 26 Texas, 239.

IV. The conclusion is reached that Turner's patent conferred no right whatever in the land which he could convey to another. We do not understand that counsel deny the correctness of this conclusion, but seek to avoid its consequences on the ground that defendants are innocent purchasers without notice of plaintiff's title. This position is based upon the fact that Towner's deed to plaintiff's ancestor, executed in 1854, was acknowledged before a justice of the peace of the state of Illinois and the certificate of acknowledgment, in other respects, does not comply with the requirements of the law, especially in failing to show that the grantor acknowledged the deed to be his *voluntary* act. At that date, the acknowledgment of deeds for lands in this state could not be made before justices of the peace in other states. The deed was recorded October 1, 1855. Defendants insist that, as this deed was insufficiently acknowledged, though recorded, it does not impart notice to them of plaintiff's title. Code, § 1942.

Let us consider for a moment the position of the parties as claimants of the land in dispute. They claim under distinct chains of titles, having, however, a common origin in the government. The government made two grants of the land; on one, plaintiff's title rests, the other is the foundation of defendants' title. The deed from the purchaser to plaintiff's ancestor, under whom plaintiff claims, is defectively acknowledged and it is not, therefore, lawfully recorded. Now, no question of registry, or want of notice, can arise upon the assurances given by the government for the land. *Arnold v. Grimes*, 2 Iowa, 1; *Heirs of Kline v. Argenbright*, 26 Iowa, 493; *David v. Rickerbaugh*, 32 Iowa, 540. Does the law protect defendants because they had no notice by the record of the deed from the grantee of the government to the plaintiff's ancestor?

Rev., § 1941, the statute requiring the registry of deeds, is

in the following language: "No instrument affecting real

**4. RECORDING act: notice: subsequent purchasers.** estate is of any validity against *subsequent purchasers* for a valuable consideration, without notice, unless recorded in the office of the recorder of the county, etc." The statute protects *subsequent purchasers* and no others. The very language of the statute leads to the conclusion that there are such as claim under the chain of title of which the deeds affected by the provision are a part. It is intended to protect the purchaser whose deed is recorded, against another conveyance that is not recorded, and contemplates the case of conflicting deeds conveying title and having a common source. No protection is intended against an independent title, distinct from that upon which the recorded deed is based. The conclusion is supported by the consideration that, in such cases, notice in fact by a record thereof could not be given. No point of commencement for an examination of the records would be suggested to the party seeking information therein. The *indexes* of the record, which under our statute are a part of the record and serve to impart notice, would give no aid in such an examination. It is, therefore, our conclusion that the term *subsequent purchaser*, occurring in the statute, is used to describe purchasers claiming under some common grantor. This position is supported by the following authorities: *Long v. Dollarhide*, 24 Cal., 218; *Roe et al v. Neal et al*, Dudley, 168; *Finno v. Sayre*, 3 Ala., 458; *Whittington v. Wright*, 9 Ga., 23; *Felton v. Hunter*, 24 Me., 29; *Crockett et al v. Maguire*, 10 Mo., 34; *Ely v. Wilcox*, 20 Wis., 530; *Rogers v. Burchard et al*, 34 Texas, 441; *Losey et al v. Simpson et al*, 11 N. J., Eq., 246; *Bates v. Norcross*, 14 Pick., 224; *Quirk v. Thomas et al*, 6 Mich., 76; *Ballou v. Murray*, 1 Johns. Ch'y, 566.

If, then, the record of the deed would not impart notice provided for by law, defendants cannot claim any strength for their title because it was not in fact recorded; they are not prejudiced thereby. It is a case where the principles of registry do not apply.

V. It is insisted that defendants have the superior equity, and must therefore prevail. They make no claim of any

equity, based upon a right acquired from plaintiff or his grant-

5. EQUITY: title.

ors or upon any act done by them. Their claim of equity rests on the bare fact that they purchased a title to the land that is utterly void—has no foundation whatever to support it. Ignorance of the rights of others will not give them a claim in equity to the property. If the courts recognized such a principle, there would at once follow speedy and great changes in the ownership of the property in the state. In order for one to recover lands on the ground of a superior equity, he must have some right to support his claim. His purchase of an utterly void title can confer no right.

VI. The deeds to plaintiff's ancestor described him by the name of *Ambrose* Rankin; his true christian name was Armstrong. Defendants claim that plaintiff cannot recover until this mistake has been corrected in a proper manner.

The petition alleges the misnomer in the deed, that the lands were in truth sold and conveyed to his father who

6. ——: conveyance: misnomer.

acquired the title thereon by such purchase and conveyance. The relief asked is that the title be quieted in plaintiff. The evidence sufficiently supports the allegations of the petition. The plaintiff is entitled to the relief asked. He would be entitled to such relief as against defendants, had his father received no deed at all and sufficient evidence were offered of the purchase of and payment for the land. He would have an equity in the land, though not the legal title, against which defendants, who, as we have seen, have no title either equitable or legal, could offer no resistance.

The fact that plaintiff's father was the person intended to be described in the deed by the name of *Ambrose* was shown. By this evidence his identity as the grantee therein was properly established.

VII. An objection is urged by defendants' counsel, based on the alleged fact that the deed of an interest in the lands to

7. PRACTICE in the supreme court: abstract: argument.

plaintiff's mother is to her and " and her heirs by Cyrus Hays." The abstract submitted by defendants makes no mention of the peculiarity alleged to exist in the deed. As we get the facts of the case from the

abstract, not from the argument of counsel, we cannot discuss questions of law arising upon the language of the deed as given in the argument. The point made by counsel is not in the case.

VIII. We come now to consider the title of defendant based upon the guardian's sale of the lands.

On the 11th of September, 1865, Cyrus Hays presented a petition to the County Court, showing that plaintiff was the owner of the lands therein described, being a part of those in controversy in this suit, and asking that he be appointed plaintiff's guardian. In the same petition he asks for the sale of the lands. He was duly appointed guardian. The court ordered that he give notice of the application to sell the lands by publication in a newspaper. It appears that the notice ordered was given. No notice of any kind was served or attempted to be served upon plaintiff, and the court made no finding of such a fact. The sale was ordered in pursuance of the application and the lands accordingly sold.

8. GUARDIAN and ward: sale : notice to ward.

The law in force at the time, Rev. § 2553, required, in proceedings for the sale of the lands of minors by their guardians, that notice of the application therefor should be served upon the ward at least ten days prior to the day of hearing.

The notice required in this section was necessary to give the court jurisdiction. In the absence of proof of notice or a finding of the court that notice had been given, the proceedings are void. It is not a case of insufficient or defective notice, as in *Shawhan v. Loffer*, 24 Iowa, 217, and other decisions of this court, but one in which there is no pretence of service of notice as required by law. Defendants, therefore, acquired no title under these void proceedings. *Good v. Norley*, 28 Iowa, 188; *Washburn v. Carmichael*, 32 Iowa, 485; *Lyon v. Vanatta*, 35 Iowa, 521. Other authority from our reports could be cited to sustain this conclusion.

IX. It is insisted by defendants that plaintiff's action is barred under Rev. § 2560, (Code § 2265,) which provides that no person can question the validity of a guardian's sale, after the lapse of five years from the time it

9. ——: ——: statute of limitations.

Rankin v. Miller.

was made. But we have held that this provision affords no protection to one claiming land under a void guardian's sale, and cannot be pleaded to defeat an action to quiet the title in the ward. *Good v. Norley, supra; Washburn v. Carmichael, supra; Boyles v. Boyles,* 37 Iowa, 592.

X. It only remains to notice briefly the tax titles of defendants, which their counsel admit are void. In both cases 10. TAX sale: there was a disposition of several distinct and sep-
action to re-
deem: minor. arate tracts of land at one sale, which, under repeated decisions of this court, renders the sales and deeds thereon void. The defendants have no protection under the limitation provided by Code, § 902, as to the sale for taxes of the interest plaintiff inherited from his father, who was dead at the time of the sale, and the inheritance was then cast upon plaintiff. He is yet a minor and, under the section just cited, an action by him will not be barred until one year after he attains his majority.

XI. But both tax sales may be disposed of by the consideration of another fact not before stated. Plaintiff's guardian 11. GUARDIAN acquired by quit-claim deed the tax titles from
and ward:
tax title: the purchasers at the sales. The deed was made
trustee. to him as guardian. This deed enured to plaintiff's benefit. The capacity in which the guardian acquired the tax titles being recited in the deed, defendants are chargeable with notice thereof, and cannot hold the land against plaintiff under the title they acquired from the guardian.

We have discussed all the questions presented in the case and reach the conclusion that plaintiff's title to all the lands in controversy ought to be quieted. A decree to that effect will be entered here, or, at plaintiff's option, the cause will be remanded to the District Court for that purpose.

AFFIRMED ON DEFENDANT'S APPEAL.
REVERSED ON PLAINTIFF'S APPEAL.